FRED L. BEDELL, Appellant, v. J. C. NICHOLS, D. M. PINKERTON, W. A. ARMOUR, WILLIAM VOLKER, JAMES E. NUGENT, CAROLYN M. FULLER, J. C. NICHOLS INVESTMENT COMPANY, CHARLES W. ARMOUR, and SCHOOL DISTRICT OF KANSAS CITY.—292 S. W. 21.

Division Two, March 14, 1927.

1. **PUBLIC OFFICER: Pecuniary Profit for Self: Equity: Substance of Transaction.** A school director is not permitted to use his fiduciary relation as a public officer to consummate a transaction with the school board whereby he makes a pecuniary profit for himself; and where equity is invoked the form of the transaction is not to control, but its general character and effect are to be considered.

2. ———: **Employed as Instrument of Board.** Where the school board, before one of its directors was brought into the final deal, had offered $5,000 an acre for fifteen acres for a school site, and had been unable to obtain it at that price, and afterwards arrangements were made by the director

316 Mo.—56.

by which he bought 74 acres from the owner at $3500 per acre, and conveyed the fifteen acres of the tract to the school district at $5,000 per acre, and retained the 59 acres for himself, he is not liable for any pecuniary profit upon the fifteen acres sold to the school district, the substance of the transaction, whatever form it took, being that the school board bought the fifteen acres at the price at which they had long desired to buy it, and by the arrangement he bought it for the district at that price, and was able to do so only by buying the whole 74 acres.

**3. Employed as Instrument of Board: School Director: Proof of Pecuniary Profit.** The fact that a school director bought a 74-acre tract at $3500 per acre and sold fifteen acres of it to the school district at $5,000 per acre does not prove that he made a pecuniary profit on the transaction, where he bought the whole tract at a lump sum, and a part of the 59 acres retained by him was worth little or nothing. Proof that he realized a profit can be made only by showing that he received more for the fifteen-acre tract than he paid for it, if in fact he bought it for himself instead of for the school district, and that can be shown only by proving the value of the entire tract and the relative value of the fifteen acres.

Corpus Juris-Cyc. References: **Schools and School Districts**, 35 Cyc., p. 1052, n. 36 New.

Appeal from Jackson Circuit Court.—*Hon. Thad B. Landon,* Judge.

AFFIRMED.

*Proctor & Phillips* for appellant.

(1) The evidence showed (when the transaction is regarded in its substance and not by its form): (a) That defendant J. C. Nichols purchased the 74 acres of land and sold 15 acres to the school district at a time when he was a member of the school board, making a profit for himself, or for his company, J. C. Nichols Investment Company, of $22,500; or (b) It showed a transaction whereby J. C. Nichols obtained 59 acres of land, in a deal dependent on and concurrently consummated with the purchase by the school district of a 15-acre tract, for a sum which would reduce his price $22,500 and furnish all of the cash. Either of which, under the issues raised by the petition and the answers, constituted a transaction opposed to a public policy and absolutely void. 2 Dillon on Municipal Corp., secs. 772, 773; 6 R. C. L. 739, 730; 18 C. J. 422; 25 C. J. 1120; 1 Bigelow on Frauds, p. 262; 4 Fletcher on Corp., sec. 2337. (2) A transaction in which a public officer is interested directly or indirectly is opposed to public policy and absolutely void. 1 Abbott on Public Corp.; 2 Dillon on Municipal Corp., secs. 772, 773; 2 McQuillin on Municipal Corp., 1104; 2 Beach on Public Corp., 1332; 24 R. C. L. 579, 580; Land & Lumber Co. v. McIntyre, 100 Wis. 245; People v. Overyasel, 11 Mich. 222; Smith v. City of Al-

bany, 61 N. Y. 444; Dwight v. Palmer, 74 Ill. 295; Berka v. Woodward, 123 Cal. 129; McGee v. Lindsay, 6 Ala. 16; Ft. Wayne v. Rosenthal, 75 Ind. 156; Mayor of Macon v. Huff, 60 Ga. 221; Sebring v. Starner, 197 N. Y. S. 202; Smith v. Dandridge, 98 Ark. 38, 34 L. R. A. (N. S.) 129; Wertz v. School District, 78 Iowa, 37; Independent School Dist. v. Collins, 15 Ida. 535; Noble v. Davidson, 177 Ind. 19; Bay v. Davidson, 133 Iowa, 688; R. S. 1919, secs. 2585, 3336, 3340, 4462, 7048, 7636, 7656, 8041, 8237, 10847, 11407, 11458, 12262, 12482; State ex rel. v. Miller, 100 Mo. 439; Seaman v. Levee District, 219 Mo. 1.

*Haff, Meservey, Michaels, Blackmar & Newkirk* for respondents J. C. Nichols and J. C. Nichols Investment Company.

(1) There was no evidence tending to support the allegations in appellant's petition, and the decree for the respondents was right. 21 C. J. 672, 682; Cosgrove v. Realty Co., 175 Mo. 100; Ross v. Ross, 81 Mo. 84; Priest v. Way, 87 Mo. 16; Lenox v. Harrison, 88 Mo. 491; Vasquez v. Ewing, 24 Mo. 31; Newham v. Kenton, 79 Mo. 382; Rumbolz v. Bennett, 86 Mo. App. 177; Georgia v. Einstein, 218 Fed. 55; McNair v. Biddle, 8 Mo. 267. (2) The interest of J. C. Nichols in the purchase of the 15 acres in controversy was not adverse to that of the board of directors. Escondido Co. v. Baldwin, 84 Pac. 284; Worrell v. Jurden, 36 Nev. 85; 31 Cyc. 1449; 2 C. J. 714; Mechem on Agency, sec. 67; Stone v. Slattery's Admr., 71 Mo. App. 442: Wilson v. Ins. Co., 90 Kan. 355; Casey v. Donovan, 65 Mo. App. 521; Lamb Knit-Goods Co. v. Lamb, 119 Mich. 568; British Am. Assurance Co. v. Cooper, 40 Pac. 150; Brown v. Brown, 39 N. E. 983; Collar v. Ford, 45 Iowa, 331; Herman v. Martineau, 1 Wis. 151; Amber-Petroleum Co. v. Breech, 111 S. W. 668; 2 C. J. 706; City of Topeka v. Huntoon, 46 Kan. 634; Smedley v. Kirby, 79 N. W. 187. (3) There is no law prohibiting a school board from purchasing property in which one of its members has an interest. Sec. 11407, R. S. 1919. (4) Even if the sale had been made by Nichols himself instead of C. W. Armour, there could be no recovery in this case without a return of the property. 2 Dillon on Municipal Corp., sec. 773; Kitchen v. Ry. Co., 69 Mo. 224; St. Louis v. Alexander, 23 Mo. 528; Morawetz on Corporations, sec. 527; Sparks v. Jasper Co., 213 Mo. 218; Seaman v. Levee Dist., 219 Mo. 1.

*McCune, Caldwell & Downing* for other respondents.

(1) The evidence shows conclusively that neither J. C. Nichols nor the Nichols Investment Company purchased from the defendant Charles W. Armour the seventy-four acres of land in controversy

at the price of $3,500 per acre, and neither Nichols nor the Nichols Investment Company resold to the school district fifteen acres of said 74 acres at $5000 an acre, nor at any other price, and neither Nichols nor the Nichols Investment Company derived any profit whatever from the sale of the said 15 acres.   (2)   A contract in which a director of the school district is interested is voidable only and not void, unless expressly so declared by statute.  Bay v. Davidson, 9 L. R. A. (N. S.) 1014, note; Trainer v. Wolfe, 140 Pa. St. 279: Diver v. Savings Bank, 126 Iowa, 691; Lower Kings River Recl. Dist. v. McCullah, 124 Cal. 175; Town of Hartley v. Floete Lumber Co., 185 Iowa, 861; Marshall v. Ellwood City Borough, 189 Pa. 38.

WHITE, J.—This suit was brought by the plaintiff as a taxpayer. The defendants Nichols, Pinkerton, W. A. Armour, Volker, Nugent and Fuller were directors of the School Board of Kansas City.  The defendant J. C. Nichols Investment Company was a corporation. Charles W. Armour was the owner of certain land which was sold to the School District of Kansas City.  The petition on which the case was tried—a bill in equity—alleged that defendant J. C. Nichols and the J. C. Nichols Investment Company, a corporation, purchased of Charles W. Armour a tract of 74 acres situated south of 65th Street, and west of Wornall Road in Kansas City, for the price of $3500 an acre, and that J. C. Nichols and the Nichols Investment Company resold to the School District of Kansas City 15 acres of the tract for the price of $5000 per acre, or $75,000, all cash, thereby making a profit of $1,500 per acre, or $22,500; that this profit was made by J. C. Nichols while a member of the school board.  It is then alleged that the transaction with the school board was without consideration, and that the school board was without authority to consent to the transaction whereby Nichols and the Nichols Investment Company realized a profit of $22,500.

It is further alleged that the plaintiff, a taxpayer, had demanded of the defendant directors of the School District of Kansas City that they obtain from defendants Nichols and the Nichols Investment Company the said sum of $22,500, with which demand the directors refused to comply.  Judgment for $22,500 and interest, against the defendants in the name of the School District of Kansas City, is prayed for.

Charles W. Armour owned a large tract of land, "the Armour farm," of which the 74-acre tract mentioned in the petition here was a part.  A few months previous to the transactions complained of the J. C. Nichols Investment Company had purchased 230 acres of the Armour farm, separated from the 74-acre tract by Wornall Road.  The principal undisputed facts, including documents, are as follows:

Charles W. Armour was a resident of Kansas City. One E. H. Peabody was his private secretary, and one H. R. Ennis was a real estate agent in charge of Armour property for sale. Josephine F. Kelly was stenographer in the office of Ennis.

On May 17, 1922, a contract was entered into between Josephine F. Kelly and Charles W. Armour whereby Armour agreed to sell to Josephine F. Kelly the tract containing 74 and a fraction acres, at $3500 per acre, the total price being $260,032. The contract recited that the purchaser had paid as earnest money ten thousand dollars and was to pay $65,000 additional on delivery of a warranty deed. The balance of the purchase price was to be paid: one-third in five years; one-third in seven years; one-third in ten years. Attached to this contract was a letter from J. C. Nichols to Mr. Peabody, Armour's secretary, dated May 18, 1922, in which he stated that he approved the contract, had deposited the $10,000 mentioned, and guaranteed the payment of the remaining $65,000.

A contract dated May 26, 1922, between Josephine F. Kelly and the School District of Kansas City, whereby she agreed to sell and convey to the School District of Kansas City, for the sum of $75,000, the 15 acres described, $5000 to be paid down, the remaining $70,000 to be paid upon delivery of a general warranty deed for the tract. The contract recites:

"This contract is made with the understanding that seller is negotiating a contract for the purchase of the above described property and other property from Charles W. Armour, and seller shall not be held liable in case she is unable to procure title from said Charles W. Armour."

A warranty deed acknowledged June 19, 1922, whereby Charles W. Armour conveyed to the School District of Kansas City the 15-acre tract for the sum of one dollar and other valuable considerations. This deed was dated June 16, 1922, acknowledged June 19, 1922, and filed for record June 27, 1922.

A warranty deed from Charles W. Armour to Josephine F. Kelly for a consideration of one dollar and other considerations, conveyed the 59 and a fraction acres remaining of the 74-acre tract. That deed was dated June 17, 1922, acknowledged June 19, 1922, and filed for record April 12, 1923.

Deed of trust from Josephine F. Kelly to Elbert H. Peabody, trustee, conveying the tract of land last mentioned to secure the payment of three notes dated June 19, 1922, the first note for $61,678, due in five years; the second note for $61,677, due in seven years; and the third for $61,677, due in ten years. These three notes mentioned in the contract constitute the entire consideration for the 59 and fraction acres, and the balance of the entire consideration of $260,032 for the 74-acre tract.

A general warranty deed from Josephine F. Kelly to the J. C. Nichols Investment Company, conveying the 59 and a fraction acre tract for one dollar, and other considerations. The deed was ac-knowledged June 19, 1922, and filed for record April 12, 1923.

The record of the School District showing the facts in relation to the purchase of the 15 acres contains the following entries:

> June 26, 1922, $5000 to H. R. Ennis, earnest money;
>
> June 30, 1922, $70,000 to Charles W. Armour, balance of pur-chase price.

It is claimed by the plaintiff that these transactions, and other facts to be mentioned below, show that J. C. Nichols purchased the entire 74 and a fraction acres and sold 15 acres to the school district, he himself being a member of the board at the time, and that the transaction was therefore void; that Nichols made a profit of $22,500 in the deal, that he was not entitled to that profit, and there-fore the plaintiff is entitled to recover the amount on behalf of the School District.

The trial court rendered judgment in favor of the defendants, who claim that Nichols did not purchase the 74-acre tract, but, by a sep-arate transaction, when the school board purchased 15 acres of the tract, he purchased the remaining 59 and a fraction acres.

It is apparent that two questions arise in consideration of the facts:

First: Did Nichols purchase the entire tract and sell the 15 acres to the school district?

Second: If so, did he make a profit on it?

A consideration of the facts pro and con on these questions is nec-essary to determine whether the judgment of the trial court was correct.

I. The appellant argues that the employment of Josephine F. Kelly as a conduit through whom the negotiations were formally con-ducted, by the nature of the transactions, made her the agent ⌐⌐⌐ ┌ ⌐ ⌐ ┌ of J. C. Nichols and the J. C. Nichols Investment **Pecuniary Profit** Company. He points out that a short time before **of School** those negotiations began Nichols had purchased at **Director.** $1650 an acre, 230 acres which were separated from the 15-acre tract only by the Wornall Road on the west. He calls attention to the letter of Nichols attached to the contract be-tween Josephine F. Kelly and Charles W. Armour whereby Nichols approved the transaction, paid the stipulated ten thousand dollars earnest money, and guaranteed payment of the remaining $65,000. The $75,000 paid by the school board was all the cash paid in the entire transaction for the 74 acres. The remainder of the purchase price for the entire tract was represented by notes of Miss Kelly payable in five, seven and ten years. It was also shown that pre-

viously negotiations were begun between Armour and Nichols concerning the 74-acre tract in which Armour asked $4000, and Nichols had offered $2500' an acre for it.

It is argued that the form of the transaction could not control in determining the case, but the substance and effect of the transaction should control, and it is a reasonable inference that Nichols employed the offices of Josephine Kelly as the instrument by which the real nature of the transaction could be disguised in form; that the fact that Josephine Kelly was in the employment of Ennis, Armour's agent, did not prevent her from being also the agent of Nichols. Nichols's relation to the school board was fiduciary; he was a public officer; the transaction in which he had an interest was presumptively fraudulent in law, on the well established doctrine that one who is entrusted with the business of another cannot be allowed to make such business an object of pecuniary profit for himself.

On the other hand the respondent points to evidence which tends to show that Nichols did not purchase the entire tract. For several months the school board had been endeavoring to buy land for a school in the vicinity of the tract actually purchased. They had considered a number of tracts, and the prices were always far in excess of the price they actually paid for the tract bought. The board at one time started a condemnation proceeding for a tract in the neighborhood, but that was afterwards abandoned. The price they would have had to pay as damage in that case would have been far in excess of what they actually paid. It was further shown that Mr. Pinkerton, president of the school board, on the authority and under the instruction of the board, had offered Mr. Ennis $5,000 an acre for the 15-acre tract. Mr. Ennis asked $6,000 an acre for it. There was evidence tending to show that the location of a school in a neighborhood like that under consideration would have a tendency to depreciate the value of surrounding property. Mr. Armour refused to sell the 15 acres at less than $6,000 an acre, but he was willing to sell the entire tract, 74 and a fraction acres, at $4,000 an acre. Everybody understood that. The evidence showed that Nichols had nothing to do with the board's offer of $5000 for the tract. After the offer of $5000 an acre, Mr. Ennis, who had charge of the Armour property, informed Mr. Pinkerton that he would try to work out a plan by which the school board might have the 15 acres at $5000 an acre, if he could get Mr. Nichols interested sufficiently to buy the remaining 59 and a fraction acres. The evidence of Mr. Ennis and Mr. Peabody, private secretary to Mr. Armour, was to the effect that Ennis, having worked out the plan himself, began negotiations with Mr. Nichols. The Nichols Investment Company had a reputation for improving property and boosting the price of property in the neighborhood where it operated. Mr. Armour had been offered $4000 an

acre for the entire tract, but it was stated by Peabody, or by Ennis, that he was not pleased with the offer; he thought the man who made it could not be relied upon to develop the property. Nichols was then brought into the arrangement. It was stated by other members of the school board and by Nichols himself that he was reluctant to go into it because of possible criticism on account of his connection with the school board, but Nichols did finally consent to the conditions in the several contracts. The deed to the 59 acres was made to him by Josephine Kelly after she had placed a mortgage on it for the entire purchase price of that part. It was understood all the time that he was to take the 59 acres.

It was shown further that it was impossible to procure as desirable a tract for the purpose of the school board anywhere in the vicinity for the same price as the property bought. Mr. Nichols's reluctance to go into the matter is shown by the way in which he protected himself from all liability. The purchase price was represented by notes of Miss Kelly, secured by a mortgage on the land. The Nichols Investment Company did not assume that debt, when it bought the property, but it did immediately expend large sums for improvements.

The appellant places emphasis upon the letter of Mr. Nichols whereby he approved the first contract, paid $10,000 earnest money, and guaranteed the balance of $65,000. But all that occurred *after* the plan of Mr. Ennis had been worked out, after the school board had agreed to take the 15 acres at $75,000, and after Mr. Nichols had agreed to take the remainder of the 74-acre tract, Mr. Nichols, understanding the contract and everything in relation to it, in order to secure the performance, guaranteed the payment of the money. It may be said the guaranty of the $65,000 was on behalf of the school board. The ten thousand dollars which he deposited was returned to him when the contracts were closed. That payment and guaranty do not prove that Nichols bought the property and sold part to the school district. Everything had been already agreed upon. It would not have made any difference if Mr. Nichols had paid the entire purchase price for the 15-acres and got his money back from the school board.

All the evidence indicates that the arrangement was the best that could be made for the school district. There was evidence tending to show that if the school board were obliged to reconvey the 15 acres to Mr. Armour or to Mr. Nichols, and receive back its $75,000, it could not possibly for the same money buy as desirable a tract anywhere in the vicinity. Of course the fact that the school district obtained a bargain in the purchase of the 15 acres would not prevent the liability of Mr. Nichols if in fact he bought the tract for a less sum and sold it to the school district for a profit. It is only a fact to be considered in determining whether the charge of the petition is true.

Appellant in his argument emphasized the point that the form of a transaction should not control, where equity is invoked, but the general character and effect of the whole matter must be considered. There is no doubt about the soundness of that proposition. If the school board had first purchased the 74 acres and had sold fifty-nine acres to Nichols on the same terms at which he actually bought it, there could have been no complaint. The central and controlling fact in the transaction was that the school board desired to purchase 15 acres; was ready and willing at all times to pay $75,000 for it, offered that price in the first place, considered the tract worth it, and nobody considered it worth less for the purpose. The only objection that arises in the transaction is the manner in which the purchase was negotiated. It does not matter about the form in which the object was achieved, or what kind of transactions were undertaken in order that the board might secure the property at that price. The basic fact is that they bought it for the price which they wanted to pay for it. In order to do so it was necessary to bring Mr. Nichols into the transaction so that, through his buying the remainder of the tract, Mr. Armour could be induced to sell the 15 acres at the price offered. It would not matter at all whether Nichols made a profit on the 59 acres or not. All that matters is that before he was brought into the deal the school board had offered $5000 an acre for the tract it wanted, and finally through the ramifications of the different transactions it got it for that price. The trial court hearing all the evidence found as a fact that Nichols did not purchase the entire tract; that he purchased only the 59 and a fraction acres, and that the school board bought the 15 acres directly, and therefore Nichols is not liable for having made a profit upon any land sold to the school district.

It must be noted here that the appellant claims the entire transaction was absolutely void. If that were true, then the school board got no title to the 15-acre tract and parted with $75,000 without any consideration. In that case the obvious remedy was to tender a deed to Mr. Nichols or to Mr. Armour for the 15 acres and demand the $75,000 back. Nobody wanted to do that. That remedy would result in a loss to the school district, so the plaintiff resorts to the only remedy in sight, in accordance with his theory, that Nichols purchased the land and sold it to the district at a profit; that being in a fiduciary relation to the school district, he should not be allowed to retain that profit. Of course, the finding of the trial court that he did not purchase it, was not the agency through which the Board got it, establishes that he could not have made a profit on it. A great deal of oral evidence was offered touching this matter. The weight of evidence supports the finding of the Chancellor that the School Board purchased 15 acres, and did not buy it from Nichols.

II.   There is another reason why the plaintiff cannot recover. While steadily asserting that the transaction, by which the 15 acres were bought, is void, the plaintiff, under the necessities of his case, affirms its validity.   A rescission is not sought.   The **Pecuniary Profit.** school district must hold on to the tract purchased and in so doing must claim a right to it by virtue of the conveyance and the payment of the purchase price.   Recovery is sought on the ground that Nichols made the purchase for it with a rake-off to himself.

For the purpose of the argument let us assume the correctness of the plaintiff's assertion that Nichols in fact devised the plan by which the purchase of the 74-acre tract was accomplished; that Miss Kelly and Mr. Ennis were his instruments in carrying through the plan. It is not disputed that the school board desired to purchase the teen acres and had already offered $5000 an acre for it.   Nichols then consummated that purchase.   In order to recover the plaintiff would have had to prove that Nichols made a profit on the purchase and sale of the fifteen acres; what Nichols paid for the 15 acres, and what he paid for the 59 and a fraction acres.   The fact that the whole 74 acres was taken at a lump sum proves nothing.   It does not prove that Nichols paid an equal price for each acre, nor that every acre in the entire tract was of equal value.   In fact, a part of the 59-acre tract was worth little or nothing.   The $3500 was not the price of each acre, but the average price for the 74 acres.   It is not as if he purchased so many bushels of wheat and turned over a part to his principal.   He might have bought a drove of cattle where some were worth two hundred dollars a head and some worth ten dollars a head, but without specifically listing the price of each he took them all at a lump sum.   It could not be said that each head of the drove was purchased at the same price.   The evidence throws light upon this feature of the transaction; Armour asked $6000 an acre for the 15 acres, and would sell it alone for no less.   He made no separate price per acre on the remaining 59 acres, but he priced the whole 74 acres at $4000 an acre, and was finally induced to take $3500 an acre for the entire tract.   In doing so, and in order to make the sale of the entire tract Armour reduced his price on the 15 acres from $6000 to $5000.   It is fair to say he so estimated it, and that Nichols and the school board so estimated the relative values and the prices of the different parts.   There was no attempt to show that in the deal the 15-acre tract was valued at less than $5000 an acre.

The plaintiff might have supported his position if he could have shown that each acre of the whole tract was of equal value, or that the 15 acres were of the same value per acre as the rest of the tract. He did not attempt to show that, but objected to evidence as to actual values or relative values of the two tracts.   He seeks to recover on the technical ground that the purchase price happened to be in

the lump sum for the whole tract, and on his theory he would be entitled to recover if the 59 acres were absolutely worthless.

Nevertheless, two of plaintiff's witnesses, on cross-examination, Mr. Peabody and Mr. Ennis, swore that the 15-acre tract was worth twice as much per acre as the other 59 acres. The plaintiff then, in defiance of his theory, offered one witness who testified that the 59 acres was worth more per acre than the 15 acres.

Mr. Proctor, for plaintiff, at one point asked a witness what was the reasonable market value of the 15-acre tract. An attorney for one defendant objected, not because such evidence was incompetent, but on the ground that the witness had not shown himself qualified to testify. Thereupon the court ruled that the question of values was not in the case. He decided the case solely on the ground that Mr. Nichols did not purchase the land, nor sell to the school district.

Other evidence indicated that the 15 acres were worth much more per acre than the rest of the tract. A draw in the 59 acres would require great expense to fill up. One witness testified that the draw was ten or twelve acres in extent. Sixty-fifth Street on one side, and Wornall Road on another side of the 15 acres, were paved. Water, light, gas and sewers all were built up close to the 15 acres, and on part of it both trunk and lateral sewer district tax had been paid. No improvements of that kind were on or near any part of the 59 acres; water, light and gas were further away; property on four sides was undeveloped. Evidence was sufficient upon which the trial court might have found that the 15 acres were more nearly worth $5000 per acre than the 59 acres were worth $3150 per acre. Proof that Nichols had realized a profit could be made only by showing that he got more for the 15-acre tract than he paid for it, if in fact he bought it, and that could be shown under the circumstances only by proving the value of the entire tract, and the relative value of the 15 acres. There was a total failure of proof that he received any profit.

The judgment of the trial court accordingly is affirmed. All concur.